## Seyler Estate

*Gretchen G. Donaldson,* for accountants.
*Michael E. Kaluza,* for objector.

McKENNA, Adm. *J.,* February 3, 1977 — This case is before us on objection filed to the first and final account of Dorothy J. Steinmeyer, executrix of the estate of her late mother, Dorothy S. Seyler. The objection was raised by Sarah K. Harley, a sister of the executrix, and a beneficiary under decedent's will. It was presented at the audit of the first and final account of December 21, 1976. It involves Mrs. Steinmeyer's claim for the $2,000 family exemption. A hearing was held in this matter on January 11, 1977.

The claimant herein is also the executrix. Her attorney acted for her in both capacities. Ordinarily, a claimant who is also acting as fiduciary of an estate should abandon one position or the other. In this case, however, the actual contest is between two sisters, sole beneficaries under the will. There are no other parties in interest. Counsel for Sarah K. Harley did not take exception to the procedure. The case was conducted without acrimony. Under the circumstances, we find no impropriety.

Decedent, Dorothy S. Seyler, died testate on July 12, 1975. By her last will and testament dated November 29, 1956, she left her entire estate in equal shares to her two daughters, Dorothy J. Steinmeyer and Sarah K. Harley. She nominated the former as her executrix. Letters testamentary were issued to said Mrs. Steinmeyer on August 7, 1975. She filed her first and final account on October 4, 1976. This lists receipts of $16,253.41 and disbursements of $9,006.31. Among the disburse-

ments is the $2,000 family exemption claimed by Mrs. Steinmeyer. In the petition for distribution presented at the audit on December 21, 1976, the executrix has listed additional disbursements totaling $534.37. This leaves a balance for distribution of $7,479.40, or $3,739.70 for the executrix and a like amount for the objector. If the objector is successful in having Mrs. Steinmeyer's claim denied, her distributive share will be increased by $1,000.

At the hearing held on January 11, 1977, there being no objection, Mrs. Steinmeyer was permitted to testify in her own behalf. She stated that decedent began residing with her and her family in May of 1952, and had, since April of 1962, been furnished with her own private room and bathroom. Decedent took virtually all of her meals at their home, while making little or no contribution toward the maintenance and support of the household.

Mrs. Steinmeyer testified that on June 24, 1966, the decedent fell and broke her left hip. This injury necessitated her hospitalization until August 26, 1966. Upon her release, decedent again took up residence with the Steinmeyers and while decedent at first experienced a great deal of difficulty in walking, within 18 months she was, with the help of a cane, fully ambulatory. On March 11, 1972, at the age of 72, decedent again fell, this time breaking her right hip. Decedent was hospitalized until May 11th of that same year, at which time she was transferred to the Skyvue Terrace Nursing Home. She remained there without interruption until her death on July 12, 1975, at the age of 76.

It is the contention of Mrs. Steinmeyer that

while her mother spent the last three years of her life in a nursing home, she remained a member of the Steinmeyer household. The witness noted that decedent entered the nursing home on the recommendation of her personal physician, Dr. David Steele. Dr. Steele made this recommendation because the nursing home could provide the necessary therapy to enable decedent to again learn to walk. The witness said that she and her family remained in constant contact with decedent during her stay in the nursing home, often visiting her as much as three times a week, and always visiting her on holidays and her birthday. She said that she and her husband willingly defrayed part of the cost of decedent's stay in the nursing home, and that she also took care of decedent's personal laundry needs. Claimant argues that the fact that her mother took no personal belongings to the nursing home, other than her clothes and a wedding ring, indicates an intention on her part to continue her relationship with the Steinmeyer household.

The objector, through her counsel, introduced into evidence certain exhibits relating to decedent's medical history. These show that decedent could feed and dress herself, that she was semiambulatory and was not incontinent. She was coherent, active and had an affinity for reading. However, the reports clearly indicate that her stay in the nursing home was always considered to be permanent. Claimant and decedent were both fully aware of this fact.

The Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), as amended, 20 P. S. §3121, provides, in part:

"The spouse of any decedent dying domiciled in

the Commonwealth, and if there be no spouse, or if he has forfeited his rights, then such children as are members of the same household as the decedent . . . may retain or claim as an exemption either real or personal property . . . to the value of $2,000."

In Niedzielski Estate, 5 Fiduc. Rep. 323 (1955), the term "household" is defined as "a family residing together in one dwelling using common living quarters and facilities under such domestic arrangements and circumstances, as create a single family unit or establishment." Moreover, it has been held that the absence of decedent at the time of his death from the same household as the claimant will not necessarily defeat the claim for the exemption. See Wilson Estate, 22 Fiduc. Rep. 126 (1972), and Skonieczki Estate, 26 D. & C. 2d 743 (1961). As stated in Henicle Estate, 15 Fiduc. Rep. 353, 360 (1965):

"[I]t seems clear there would have to be a definitive and substantial removal from a home where a decedent had been living for a long time before a court would find he had changed households."

And:

"The fact that when leaving the hospital one goes to a nursing home or goes to some other household . . . would not necesarily mean a change of residence or a change of household for all purposes or for the purpose of the family exemption."

However, we find that where, as in the case at bar, a parent leaves her daughter's residence for a nursing home and it becomes clear that the parent will remain in the home for the rest of her life, and will not return to the residence of her daughter, and she dies in the nursing home, it cannot be said

that at the time of her death she was a member of the daughter's household. This is consistent with the above cases. See Mannke Estate, 24 Fiduc. Rep. 344 (1974).